IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC. | * | |
| | * | |
| Plaintiff, | * | |
| vs. | * | No. 4:11-cv-00690-SWW |
| | * | |
| | * | |
| BREWSTER "2" CAFÉ, LLC d/b/a | * | |
| BREWSTERS "2" CAFÉ, | * | |
| | * | |
| Defendant. | * | |

## OPINION AND ORDER

J & J Sports Productions, Inc. (J & J), a California corporation, brings this action against Brewster "2" Café, LLC d/b/a Brewsters "2" Café (Brewsters), a commercial establishment in Little Rock, Arkansas, pursuant to the Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605. J & J also asserts a claim of conversion under Arkansas law. J & J claims Brewsters violated its rights as the exclusive commercial domestic distributor of the televised fight program, *"Number One" Floyd Mayweather, Jr. v. Juan Marquez Championship Fight Program* (the "Program").

Before the Court are cross-motions of J & J and Brewsters for summary judgment [doc.#'s 52, 53]. J & J and Brewsters have responded in opposition to each other's motion and each has replied to the other's response. For the reasons that follow, the Court grants in part and denies in part J & J's motion for summary judgment and grants in part and denies in part Brewsters' motion for summary judgment.[1]

---

[1] The Court rejects Brewsters' argument that J & J's response to its motion for summary judgment is untimely and should not be considered. Brewsters filed its motion for summary judgment on August 15, 2014, and served it on J & J that same day via the Court's electronic case filing system, thereby making J & J's response due 17 days later. See Local Rule 7.2(b)

I.

J & J was granted the exclusive commercial distribution rights to the Program, which also encompassed all undercard events. The Program telecast nationwide on September 19, 2009, and was exhibited at that time by Brewsters at its commercial establishment located on South Arch Street in Little Rock, Arkansas.

J & J's commercial licensing fee to exhibit the Program for an establishment the size of Brewsters was $2,200. Brewsters did not pay a licensing fee to J & J to exhibit the Program and did not otherwise have permission from J & J to exhibit the Program at its establishment. Rather, Brewsters ordered the Program from its cable provider, Comcast Cable Television (Comcast), for $152.93 (plus taxes, surcharges, and fees).

Investigator John Sutton states in a Declaration that on September 19, 2009, at approximately 10:15 p.m., he observed the exhibition of the Program at Brewsters on three televisions of various sizes. Sutton estimated the capacity of Brewsters to be 100 and that at the time he was present, there were between 89-102 patrons. He further states that Brewsters charged a $7.00 cover charge to enter the establishment that night and that this was explained to him when he asked if the Program was being exhibited.

---

(providing that opposition to a motion shall be served and filed within 14 days from the date of service and referring to Fed.R.Civ.P. 6, including subparagraph 6(d), for determining how days are counted under this local rule); Fed.R.Civ.P. 6(d) (providing that when a party may or must act within a specified time after service and service is made, *inter alia*, under Rule 5(b)(2)(E), *i.e.*, "sending it by electronic means," 3 days are added after the period would otherwise expire under Rule 6(a)). The final day of the 17-day period for J & J to respond to Brewsters' motion for summary judgment fell on September 1, 2014. Because September 1 was a legal holiday (Labor Day) and, thus, excluded from the time computation, see Fed.R.Civ.P. 6(a)(1)(C), and 6(a)(6)), J & J's response became due on September 2, 2014, which is the day J & J filed its response.

Brewsters does not dispute that between 89 and 102 patrons were present when the Program was exhibited and it acknowledges that a $7.00 cover charge was required to enter the establishment that night. Brewsters claims, however, that it rented out its establishment for a private birthday party on that night and that the cover charge was required and retained by the group holding that party, who was also in control of the television(s) at the time the Program was exhibited.

II.

J & J moves for summary judgment on grounds that Brewsters unlawfully intercepted and exhibited the Program at its commercial establishment in violation of 47 U.S.C. §§ 553, 605, thereby entitling it to statutory and enhanced damages, and that it is also entitled to damages for conversion. Brewsters, in turn, moves for summary judgment on grounds that it was authorized to receive and exhibit the Program, that § 605 does not apply to cable signals, and that J & J's conversion claim is duplicative of its federal claims. Both parties argue there are no genuine issues of material fact with respect to any of these issues and that they are each entitled to summary judgment as a matter of law.

A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," or show "that the materials cited do not establish the absence or presence of a genuine dispute," or "that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)-(B). "The court need

consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citations omitted).  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id*.

B.

47 U.S.C. § 553 deals with theft of cable television communications, while 47 U.S.C. § 605 deals with theft of satellite television communications.  *J & J Sports Productions, Inc. v. Alcantara*, Civil No. 13-00220 LEK-RLP, 2014 WL 1669070, *2 (D. Hawai`i April 25, 2014).  J & J notes that there is a split of authority regarding whether a single interception may violate both § 553 and § 605, see *id*., and that it in any case may not recover damages under both sections for one violation.  See, *e.g., J & J Sports Productions, Inc. v. Onyx Dreams Inc.*, No. 12-CV-5355 (SLT) (LB), 2013 WL 6192546, *3 (E.D.N.Y. Nov. 26, 2013) (where a defendant's liability can be established pursuant to both §§ 553 and 605, a plaintiff may recover damages under only one of those sections).  Given also that Brewsters acknowledges it exhibited the

Program via cable, J & J primarily addresses the issues under § 553 and, "to the extent necessary, ... requests that liability be found under 47 U.S.C. § 553."

Assuming J & J has not waived its claim under § 605, the Court agrees with the circuit courts of appeals holding that § 605 does not encompass the conduct presented here: the receipt or interception of communications by wire from a cable system.  See, *e.g., J&J Sports Productions, Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351 (5th Cir. 2014) (joining the majority of circuits holding that § 605 does not encompass the receipt or interception of communications by wire from a cable system).  Accordingly, the Court grants Brewsters' motion for summary judgment on J & J's § 605 claim.

<div align="center">C.</div>

The Court now turns to J & J's § 553 claim.  Section 553(a)(1) imposes civil and criminal liability for "intercepting or receiving any communications service offered over a cable system." 47 U.S.C. § 553(a)(1).  However, § 553(a)(1) "includes an essential exclusion, often referred to as a 'safe harbor,' that precludes the imposition of liability on the majority of cable recipients–customers of cable providers." *Mandell Family Ventures*, 751 F.3d at 348.  This exclusion constrains the reach of the statute by exempting from liability those who receive authorization from a cable operator:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, *unless specifically authorized to do so by a cable operator* or as may otherwise be specifically authorized by law.

*Id*. (quoting 47 U.S.C. § 553(a)(1) and adding emphasis).

<div align="center">1.</div>

J & J argues that § 553 is a strict liability statute and that it has established liability as the

undisputed evidence shows that J & J owned the exclusive license to the Program and Brewsters exhibited the Program at its establishment without paying J & J its license fee. *Cf. J & J Sports Productions, Inc. v. Bath,* No. CV F 11-1564 LJO SAB, 2013 WL 5954892, *5 (E.D. Cal. Nov. 7, 2013) (noting that §§ 553, 605 are strict liability statutes and that to prove a violation of those statutes, plaintiff need only show that the Program was shown in defendant's establishment without plaintiff's authorization). Brewsters, however, argues that even if § 553 is a strict liability statute, it was specifically authorized by its cable provider–Comcast–to receive and exhibit the Program at its establishment and, thus, there was no violation of § 553.

It is true that "in order for a cable customer to ensure that it is not criminally or civilly liable under § 553(a)(1), it need only receive authorization from a cable operator for the cable services it receives." *Mandell Family Ventures*, 751 F.3d at 348. A cable customer who receives such authorization is not required to take the additional step of ensuring that the cable operator itself is licensed to distribute the broadcast that the customer views. *Id*. But here, Comcast gave no such authorization to Brewsters as made clear by the Comcast Business Services Customer Terms and Conditions agreement that Brewsters had with Comcast.[2] The

---

[2] J & J asks the Court to take judicial notice of the Comcast Terms and Conditions pursuant to Rule 201(b)(2) of the Federal Rules of Evidence. Rule 201(b)(2) permits a court to "judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2). As previously noted, the Program broadcast on September 19, 2009, and Comcast's website contains a link to the Terms and Conditions that applied to services purchased between May 4, 2009 and October 25, 2010. Brewsters, however, questions "whether this particular terms of service governed the type of account for the subject location in this case (as there are many types of TV service accounts)" and notes that there "is no evidence that defendant agreed to these alleged terms of service or had any knowledge of them." But it is Brewsters that is claiming it was authorized by Comcast to exhibit the Program and Brewsters, obviously knowing the type of TV service account that it had with Comcast, has not presented any terms and conditions for its account that differ from the Comcast Terms and Conditions

Comcast Terms and Conditions provide in relevant part:

> **21.1 Redistribution Limitation**. Customer hereby acknowledges and agrees that Comcast does not have the absolute right to distribute pay-per-view video programming (including programming such as sporting events) ... to commercial establishments. Therefore, Customer agrees that it shall not exhibit nor assist in the exhibition of any such programming unless explicitly authorized to do so, in advance and in writing, by Comcast and the applicable program or event distributor.

Comcast Business Services Customer Terms and Conditions, Article 21: Limitation of Service, ¶ 21.1. Courts considering the same Comcast Terms and Conditions have rejected claims from defendants that they received the program with Comcast's authorization and thus did not violate § 553. Instead these courts held that the defendants in those cases knew or reasonably should have been aware that Comcast was not in a position to authorize them to exhibit the program and that they were required to obtain such authorization in writing from Comcast and the program distributor. See *Joe Hand Promotions, Inc. v. Phoenix Promotions LLC*, No. 10-15102, 2012 WL 3025107 (E.D. Mich. July 24, 2012) (noting that the Comcast terms and conditions require that defendants obtain authorization in writing before exhibiting the program and that based upon Comcast's terms and conditions, defendants knew or reasonably should have been aware

---

agreement in effect on the date of the broadcast of the Program. *Cf. Joe Hand Promotions, Inc. v. Dock Street Enterprises, Inc.*, Civil Action No. WMN-11-1973, 2012 WL 401080, *2 (D.Md. Feb. 7, 2012) (noting that "if Defendants' agreement with Comcast contains different terms than those in the agreement submitted by Plaintiff, Defendants certainly could have submitted that agreement but did not do so and have yet to do so."). Brewsters cannot credibly claim it was authorized by Comcast to exhibit the Program and then claim, without supporting evidence, that it had no knowledge of Comcast's Terms and Conditions as applicable to its account. Accordingly, the Court takes judicial notice of the Comcast Terms and Conditions, finding they "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *Cf. J and J Sports Productions v. Coyne*, 857 F.Supp.2d 909, 916 n. 6 (N.D. Cal. 2012) (taking judicial notice of same Comcast Terms and Conditions as they were "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned").

that Comcast was not in a position to authorize it to transmit the program); *J and J Sports Productions v. Coyne*, 857 F.Supp.2d 909 (N.D. Cal. 2012) (defendant knew or reasonably should have been aware that Comcast was not in a position to authorize it to transmit the Program because defendant's Business Services Customer Terms and Conditions Agreement with Comcast made clear that Comcast did not have the right to authorize defendant's dissemination of the Program); *J & J Sports Productions, Inc. v. TCOS Enterprises, Inc.*, Civil Action No. 10-7130, 2012 WL 124482 (E.D. Pa. Jan. 13, 2012) (bar that ordered program through Comcast commercial account was not "specifically authorized" under § 553 because Comcast Business Services Customer Terms and Conditions required the bar to obtain authorization in writing). The Court agrees with the reasoning of those cases and likewise finds that Brewsters, based on the same Comcast Terms and Conditions, knew or reasonably should have been aware that Comcast was not in a position to authorize it to exhibit the Program and that Brewsters was required to obtain authorization in writing from Comcast and J & J before exhibiting the Program. Because Brewsters was not "specifically authorized" by Comcast and J & J to exhibit the Program, the Court grants J & J's motion for summary judgment on its § 553 claim.[3]

---

[3] Brewsters cites *J & J Productions, Inc. v. Schmalz*, 745 F.Supp.2d 844 (S.D. Ohio 2010), and *Mandell Family Ventures*, 751 F.3d 346, in support of its claim that it was authorized to exhibit the Program. Those cases, however, are distinguishable. Unlike the Comcast Terms and Conditions at issue in this case, the licensing agreement in *Schmalz* provided that it was the responsibility of the cable operator–Time Warner Cable (TWC)–to make defendants aware that it was not authorized to sell such rights to defendants, and the fact that TWC was not authorized to sell such rights to defendants was not a fact of which defendants were aware or should reasonably be expected to be aware. 745 F.Supp.2d at 851. Likewise, the Fifth Circuit in *Mandell Family Ventures* found, *inter alia*, that language in the TWC Service Agreement at issue in that case suggested that TWC obligated itself to ensure that the services it distributed to defendants were authorized and made pursuant to the proper license. 751 F.3d at 350. In so

2.

The Court now turns to J & J's claim for statutory damages. Pursuant to § 553(c)(3)(A)(ii), the Court may award statutory damages of at least $250 and not more than $10,000 per violation.

Statutory damages for unauthorized interception or receipt of a cable signal "'should be based solely on the estimated value of the services stolen, without consideration of other harms ... or of other policies favoring deterrence.'" *Joe Hand Promotions, Inc. v. Yakubets*, — F.Supp.2d —, 2014 WL 960787, *7 (E.D. Pa. March 11, 2014) (quoting *Charter Communications Entertainment I, DST v. Burdulis*, 460 F.3d 168, 181 (1st Cir. 2006)).[4] "Because statutory damages are merely an alternative to actual damages, they should be as reasonable an estimate of actual damages as the facts ... allow, not greater." *Id*. (internal quotation marks omitted).

Here, J & J does not suggest an amount of appropriate statutory damages and has not shown any damages other than the $2,200 it would have cost Brewsters to obtain a license from J & J to lawfully exhibit the program. J & J does argue that the amount awarded must be sufficient to deter Brewsters and others from committing similar acts in the future but that argument conflates statutory and enhanced damages. Rather, the Court finds in this instance that

---

finding, the Fifth Circuit distinguished those cases in which the terms and conditions of the cable provider (primarily Comcast) specifically addressed (as here) pay-per-view broadcasts of sporting events and contained language requiring the customer to obtain advance written authorization from the cable provider and the program or event distributor to exhibit or assist in the exhibition of the programming. *Id*. at 350 n.6.

[4] The court noted that § 553's overall structure favors weighing deterrence under the enhanced damages provision and not under the statutory damages provision. *Id*. at *8 (citing *Burdulis*, 460 F.3d at 183).

the $2,200 it would have cost Brewers to obtain a license from J & J to lawfully exhibit the Program is the appropriate amount of statutory damages. *Cf. Joe Hand Productions, Inc. v. Feil*, Civil No. 12-CV-1603 (SRN/AJB), 2013 WL 2936389 (D. Minn. June 14, 2013) (awarding as statutory damages the $1,100 that it would have cost defendants to obtain a license to lawfully exhibit the boxing match and noting that the statutory provision for enhanced damages best advances the goal of deterrence); *J & J Sports Productions, Inc. v. Cortes*, Civ. Nos. 10–1952 (RHK/JJK), 10–2772 (RHK/JJK), 10–4802 (RHK/JJK), 2012 WL 2370206 (D. Minn. June 22, 2012) (finding an appropriate amount of statutory damages to be the $2,200 it would cost to obtain a license to lawfully exhibit the boxing match in question).[5]

<div align="center">3.</div>

J & J also seeks enhanced damages. Pursuant to § 553(c)(3)(B), a court, in its discretion, may increase the damages award by not more than $50,000 if it finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain. "Willfulness is 'disregard for the governing statute and an indifference to its requirements.'" *Comcast of Illinois X v. Multi-Vision Electronics, Inc.*, 491 F.3d 938, 947 (8th Cir. 2007) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).

Enhanced damages are intended to punish willful violations of the law and to deter similar misconduct. *Feil*, 2013 WL 2936389, *2 (citation and quotation marks omitted). In

---

[5] J & J points out that in *J & J Sports Productions, Inc. v. Acevedo*, No. 4:09CV00496 SWW, 2010 WL 1980849 (E.D. Ark. May 13, 2010), this Court "recognize[d] that deterrence of future violations is a significant objective of §§ 553 and 605" and found "that because of the unlawful interception and the need for significant deterrence, Plaintiff is entitled to the statutory maximum damages of $10,000.00." *Acevedo*, however, was a default case in which defendants did not contest any of J & J's arguments.

determining the appropriate amount of enhanced damages to be awarded, courts typically consider whether there have been repeated violations over an extended period of time, whether the defendant advertised the event or charged a cover charge, the amount of the defendant's gain, and other similar factors. *Id.* Generally speaking, courts award anywhere from three to six times the statutory damages award for enhanced damages. *Id.*; *Cortes*, 2012 WL 2370206, *2; *J & J Sports Productions, Inc. v. Waters*, No. 3:12-cv-779-FDW-DCK, 2013 WL 2948318, *6-7 (W.D.N.C. June 14, 2013). See also *Yakubets*, — F.Supp.2d —, 2014 WL 960787, *19 (noting that "[t]he application to the actual or statutory damages award of a simple multiplier, the value of which may be adjusted as the case demands, best achieves the dual goals of general and specific deterrence" and that "[i]ndeed, courts applying multipliers 'have awarded anywhere from three to six times the statutory damages award for enhanced damages.'").

Here, many of the factors weigh in favor of Brewsters. While there was a $7.00 cover charge to enter the establishment the night the Program was exhibited, there was no advertising of the Program and J & J has not created a genuine issue of material fact concerning Brewsters' claim that its establishment was rented out to a group holding a birthday party and that the cover charge was collected and retained by that group. In this respect, J & J has not shown any financial gain by Brewsters from the exhibition of the Program, such as retaining any portion of the cover charge, charging an enhanced rental fee for its establishment that was tied to the viewing of the Program, or charging a special premium for food and drinks that was tied to the viewing of the Program.[6] Nor has J & J shown that Brewsters was a repeat offender and that this

---

[6] Dena M. Patterson, who was dismissed as a defendant in this action due to J & J not filing proof of service as to her, states in a Declaration that she has an ownership interest in Brewsters and that Brewsters "did not gain anything from the alleged incident, as there was no

was anything other than a single violation. See *Joe Hand Promotions, Inc. v. Thompson*, No. 4:11-CV-1740 CAS, 2013 WL 466278, *3 (E.D. Mo. Feb. 7, 2013) (noting that while the amount of damages should be an adequate deterrent, a single violation is not so serious as to warrant putting the establishment out of business). Nevertheless, there is no doubt that Brewsters, for purposes of obtaining commercial advantage, showed a disregard for § 553 and an indifference to its requirements by ordering the Program from Comcast and allowing a group that had rented its establishment to charge a $7.00 cover charge to between 89 and 102 individuals for permission to enter the establishment in which the Program was being exhibited. Accordingly, even though many of the factors weigh in favor of Brewsters, an award of enhanced damages is warranted. *Cf. Kingvision Pay-Per-View, Ltd. v. Zalazar*, 653 F.Supp.2d 335, 342 (S.D.N.Y. 2009) (in finding that defendant acted to obtain a commercial advantage in exhibiting boxing telecast, court noted, *inter alia*, that "[a]lthough there is no evidence that the [establishment] realized any direct financial gain from showing the Program, defendants' pattern of showing such unauthorized programs was presumably intended, at least in part, to assist in retaining loyal customers and generating goodwill for the business."); *Joe Hand Promotions, Inc. v. Abrell*, No. 1:10-cv-00450-TWP-DML, 2012 WL 2458636, *3 (S.D. Ind. June 27, 2012) (in finding that the evidence indicated knowing and willful behavior in exhibiting a mixed martial arts match, thus justifying an award of enhanced damages, court noted that "[a]lthough [defendant] did not charge a cover charge or advertise the event, he illegally showed the fight; in doing so he perhaps bolstered [the establishment's] reputation as a place to watch highly-

---

increase in sales or financial benefit that could be attributed to the exhibition of that TV program. In fact, it was essentially a private viewing at this location because there was a private birthday that was watching it ... and that party was in control over the TV at that time."

anticipated fights."). Having considered the circumstances, the Court finds that enhanced damages in the amount of $6,600–three times the statutory damages award–is appropriate.

D.

The Court now turns to J & J's state law conversion claim. J & J seeks under this claim the $2,200 it would have cost Brewers to obtain a license from J & J to lawfully exhibit the Program.

Although there is some authority to the contrary, the Court agrees with those courts holding that recovery under both § 553 and a state law conversion claim would result in an impermissible double recovery for the same loss. See, *e.g., Joe Hand Promotions, Inc. v. Double Down Entertainment*, LLC, No. 0:11-cv-02438-MBS, 2014 WL 994382, *9 (D.S.C. March 13, 2014); *Joe Hand Promotions, Inc. v. Peterson*, No. 8:12CV241, 2014 WL 824119, *5 (D. Neb. March 3, 2014); *Waters*, 2013 WL 2948318, *4; *Joe Hand Promotions, Inc. v. Dock Street Enterprises, Inc.*, Civil Action No. WMN-11-1973, 2011 WL 6141058, *5 n.5 (D. Md. Dec. 8, 2011). Because J & J has today recovered under § 553 the $2,200 it would have cost Brewers to obtain a license from J & J to lawfully exhibit the Program, the Court denies as moot J & J's state law conversion claim for that same amount. *Cf. Peterson*, 2014 WL 824119, *5 (court concluded it need not determine whether Nebraska law contemplates a conversion action for intangible property because if defendant recovers under either § 553 or § 605, its state law conversion claim is not viable); *Columbia Cable TV Co., Inc. v. McCary*, 954 F.Supp.124, 129 (D.S.C. 1996) (declining to resolve conversion claim where, *inter alia*, any such damages would


not exceed damages under § 553).[7]

E.

Finally, J & J requests that it be granted 14 days from the date of entry of judgment in which to submit a motion for costs and attorneys' fees. Under § 553(c)(2)(C), a court may direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails. An award of attorneys' fees under § 553(c)(2)(C) is not mandatory but is left to the discretion of the court. *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009-10 (2nd Cir. 1993).

Here, because the Court has taken into consideration the costs and fees of prosecuting this action in awarding damages,[8] the Court declines to award costs and attorneys' fees under § 553(c)(2)(C). *Cf. McCary*, 954 F.Supp. at 128 (taking the cost of prosecuting action into consideration in awarding damages and therefore declining to award attorneys' fees under § 553(c)(2)(C)).

III.

For the foregoing reasons, the Court grants in part and denies in part the motion for summary judgment of J & J Sports Production, Inc. [doc.#53] and grants in part and denies in part the motion for summary judgment of Brewster "2" Café, LLC d/b/a Brewsters "2" Café

---

[7] In *Acevedo*, 2010 WL 1980849, this Court found liability under both § 605 and state law conversion and awarded damages of $110,000 under § 605 ($10,000 statutory, and $100,000 enhanced) and $2,800 under the conversion claim. Again, however, *Acevedo*, like many of the cases awarding statutory damages and damages for conversion, was a default case and the defendants did not contest any of J & J's arguments.

[8] This includes J & J's failure to diligently prosecute this action (see doc.#34), and the fact that the attorneys' fees incurred by J & J, based on the Court's familiarity with the case and the services performed, are relatively minimal.

[doc.#52].  The Court awards J & J Sports Production, Inc. statutory damages in the amount of $2,200 pursuant to § 553(c)(3)(A)(ii) and enhanced damages in the amount of $6,600 pursuant to § 553(c)(3)(B).  The Court will enter judgment accordingly.

        IT IS SO ORDERED this 2nd day of October 2014.

                                <u>/s/Susan Webber Wright</u>
                                UNITED STATES DISTRICT JUDGE